IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID MCCLINTON           *
     Plaintiff,
   v.                        *     CIVIL ACTION NO. DKC-10-3040

DR. JONATHAN THOMPSON     *
     Defendant.
                            ***

## MEMORANDUM OPINION

### I.    PROCEDURAL HISTORY

This 42 U.S.C. § 1983 civil rights Complaint was received for filing on October 27, 2010. Plaintiff, a former Division of Correction ("DOC") inmate, complains that in June of 2010 he dislocated his left shoulder. He claims that a physician's order recommended a lower bunk housing restriction and Tylenol # 3 for pain. Plaintiff asserts that in August of 2010 he was examined by a surgeon at Bon Secours Hospital who recommended surgery. He alleges that as of the filing date of the Complaint no action has been taken. Plaintiff asks the court to order surgery and to award him money.

### II.    PENDING MOTIONS

Currently before the court is Defendant's unopposed Motion to Dismiss or, in the Alternative, for Summary Judgment.[1] ECF No. 11. The undersigned has examined the exhibits (affidavit and medical records) submitted by Defendant and finds that no hearing is necessary. *See*

---

[1] The Division of Correction Office of Data Processing confirms that Plaintiff was released from confinement on December 23, 2010. In his dispositive filing counsel for Defendant notes that Plaintiff failed to furnish the court his current address, but includes Plaintiff's last known address found in his medical records. ECF No. 11 at Certificate of Service. The notice sent to Plaintiff pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) was originally sent to the DOC address on record, but was returned and remailed to Plaintiff at the Baltimore address provided by counsel. ECF Nos. 12-13. No opposition material has been filed.

Local Rule 105.6. (D. Md. 2009). For reasons to follow, Defendant's Motion, construed as a motion for summary judgment, shall be granted.

III. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369

U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## IV. DISCUSSION

### 1. Facts

The parties do not dispute that Plaintiff has no known history of shoulder problems but has a host of other conditions, including hypertension, asthma, diabetes, tension headaches, hypoglycemia, and sickle cell trait. ECF No. 11, Ex. A; Ex. B at p. 1. On May 16, 2010, he appeared at the dispensary complaining of pain in his left shoulder. He was evaluated by Nurse Practitioner Joan Cappell, who was informed by Plaintiff that he felt a "pop" in his shoulder while he was lifting 200 pounds of weight. Cappell noted that Plaintiff's left shoulder was very painful when palpated and had a limited range of motion ("ROM") on all four planes. Mild palpation revealed no dislocation. Cappell ordered an x-ray of the left shoulder, gave Plaintiff a sling to immobilize the shoulder, and prescribed Tylenol #3 with codeine as needed for pain. *Id*., Ex. A; Ex. B at pgs. 2-4, 6, & 63. Dr. Jonathan Thompson evaluated Plaintiff in the Chronic Care Clinic ("CCC") on May 17, 2010, for asthma, diabetes, and hypertension. Plaintiff did complain of severe pain in his left shoulder at that time. Examination revealed zero ROM in his shoulder, but only minimal edema (swelling). Thompson's "wet-reading" of the x-ray showed a dislocation of Plaintiff's shoulder joint. Plaintiff

received one dose of Nubain, an opioid analgesic, and was referred to a physician's assistant to have his shoulder relocated. That same date, Physician's Assistant ("P.A.") Kevin McDonald applied traction to Plaintiff's shoulder, apparently relocating it. The pulses in Plaintiff's left wrist were good and his arm sling was continued for two more weeks. ECF No. 11, Ex. A; Ex. B at pgs. 7-12 & 63-65.

The radiologist's reading of the x-ray on May 20, 2010, contradicted Dr. Thompson's finding and revealed no evidence of a fracture or dislocation and normal anatomical alignment. On May 18, 2010, Plaintiff complained that he dislocated his left shoulder while getting out of his bunk. P.A. McDonald applied weight to Plaintiff's arm and relocated the shoulder joint. On May 26, 2010, Plaintiff again claimed he dislocated his left shoulder while trying to hop onto his top bunk. He was given one dose of Nubain for his complaint of pain. The dislocation was confirmed by an x-ray taken on the same day. P.A. McDonald relocated the shoulder by applying weights. Dr. Thompson recommended a bottom bunk for Plaintiff for one year. *Id.*, Ex. A; Ex. B at pgs. 5, 13-19 & 66.

On May 27, 2010, Plaintiff again appeared at the dispensary complaining that his left shoulder dislocated while he slept. P.A. McDonald was able to relocate the shoulder by applying weights and submitted a consultation request form for Plaintiff to be evaluated by an orthopedic surgeon for repeated dislocation of the left shoulder. McDonald also renewed Plaintiff's Tylenol #3 prescription and ordered that Plaintiff come to "Pill Call" every six hours for pain medication. The consultation was approved on June 2, 2010. *Id.*, Ex. A; Ex. B at pgs. 20-25 & 28.

On June 4, 2010, Plaintiff submitted a sick-call request form complaining that he was still assigned to a top bunk and his shoulder was "really hurting." The bottom bunk assignment was re-ordered by Dr. Thompson. In addition, P.A. Emily Staub issued a temporary medical order for no work or recreation status in light of Plaintiff's continuing complaints of left shoulder pain. On June

4

26, 2010, Plaintiff indicated that his left shoulder pain was minimal. ECF No. 11, Ex. A; Ex. B at pgs. 29-36 & 68-70.

Plaintiff was evaluated by orthopedic surgeon Dr. Ashok Krishnaswamy at Bon Secours Hospital on July 27, 2010. His initial impression was that Plaintiff had a slight inferior subluxation (temporary, partial dislocation) with a rotator cuff and labrum tear. He recommended an MRI and suggested that if the MRI showed a rotator cuff or labrum tear, Plaintiff would require surgery to repair his shoulder. Plaintiff was advised to continue to use his arm sling. Plaintiff was seen in the dispensary by P.A. Eric Feldman on July 31, 2010, in response to his sick-call encounter form complaining of shoulder pain and the need for surgery. The examination showed that Plaintiff had a decreased ROM in his left shoulder because of pain, but had good strength and pulses in his arm. Feldman prescribed naproxen and requested that the orthopedic surgeon's report, which had not yet been received and placed in Plaintiff's chart, be obtained. ECF No. 11, Ex. A; Ex. B at pgs. 37-43 & 71.

On August 14, 2010, Feldman noted the surgeon's recommendation for an MRI and submitted a consultation request form for Plaintiff to undergo the test. Plaintiff was again seen by Feldman on September 11, 2010, for complaints of pain and ineffective pain medication. Feldman prescribed the muscle relaxant Robaxin. *Id*., Ex. A; Ex. B at 44-49 & 72.

The MRI of Plaintiff's left shoulder was performed on September 20, 2010. It showed no rotator cuff tear and no definite labrum tear, but showed "cystic changes in the glenoid as well as a slight flattening of the posterior aspect of the humeral head most likely related to a combination of degenerative change and a Hill-Sachs deformity from previous dislocation." A tendinopathy was

seen in the subscapularis tendon.[2] On September 23, 2010, Nurse Practitioner Cappell reviewed the results with Plaintiff. He nonetheless continued to complain of shoulder pain at a level of four out of ten, with ten being the worst pain. Plaintiff told Cappell he was allergic to Motrin and that he did not want Tylenol for his complaints of pain. His Robaxin prescription was still active. Cappell advised Plaintiff not to lift weights so as to prevent more damage to his shoulder. ECF No. 11, Ex. A; Ex. B at pgs. 50-53.

According to Defendant, Plaintiff offered no further complaints of left shoulder pain. On October 5, 2010, he was seen by P.A. Staub, who observed that Plaintiff was not wearing the arm sling and refused to do so. He offered no specific complaints at that time. P.A. Staub submitted a consultation request for Plaintiff to have a follow-up appointment with the orthopedic surgeon. Naproxen was again prescribed. On October 14, 2010, Plaintiff was evaluated by the orthopedic surgeon who recommended surgery to correct an instability of Plaintiff's shoulder caused by early arthritis of the glenohumeral joint.[3] Plaintiff gave his approval to be a surgical candidate, but on October 27, 2010, Wexford Health Services, Inc., the utilization review contractor for the Department of Public Safety and Correctional Services, denied the surgery request. Plaintiff offered no further complaints of pain in his left shoulder and had no known further dislocations of his shoulder. He was released from the DOC on December 23, 2010. ECF No. 11, Ex. A; Ex. B at pgs. 54-62, & 73-75.

---

[2] Tendinopathy is an injury to the tendon which occurs in tendons near joints such as the knee, shoulder and ankle. *See* http://www.upmc.com (copy attached). The tendon of the subscapularis muscle is one of four tendons that stabilize the shoulder joint and constitute the rotator cuff. *See* www.medterms.com (copy attached).

[3] The glenohumeral joint, commonly referred to as the ball-and-socket joint, normally functions through a wide range of motions in a smooth, congruent fashion. When the articular surfaces of the humeral head or the glenoid are damaged, the smooth, fluid motion of the joint is compromised and arthritis is commonly the result. *See* http://emedicine.medscape.com (copy attached).

6

2. Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the

7

requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

Plaintiff names Dr. Thompson as the sole Defendant. The record shows, however, that during the relevant time period from May 2010 to December 2010, Plaintiff was evaluated repeatedly by prison nurses, P.A.s, and physicians; underwent a number of shoulder relocation procedures by health care staff; was prescribed different pain medications; received health care orders restricting his bunk and work assignments and recreation; received x-rays and an MRI; and consulted with an orthopedic surgeon on two occasions. Although recommended for surgery to correct an instability related to arthritis-- not a rotor cuff or labrum tear-- the surgical procedure was denied by Wexford. The uncontroverted record shows that Dr. Thompson and other on-site medical staff made an effort to diagnose and treat Plaintiff's complaints of pain and the objective findings of limited to zero ROM as to his left shoulder. No deliberate indifference has been demonstrated on the part of health care staff.

V.  CONCLUSION

For the aforementioned reasons, the Court finds no Eighth Amendment violation. Defendant's court-construed motion for summary judgment shall be granted.  A separate Order follows.


Date:  May 4, 2011                                        /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge